**PETROLEUM HELICOPTERS, INC., et al., Petitioners,**

v.

**David COLLIER, and Director, Office of Workers Compensation Programs, U.S. Department of Labor, Respondents.**

No. 85–4321.

United States Court of Appeals, Fifth Circuit.

March 10, 1986.

Donald Gillis, Miami, Fla., for petitioners.

T. Timothy Ryan, Jr., Sol., Dept. of Labor, Washington, D.C., Michael Cucullu, Houston, Tex., for respondents.

Benefits Review Bd., U.S. Dept. of Labor, Linda M. Meekins, Washington, D.C., for Other Interested Parties.

Before GEE, and GARWOOD, Circuit Judges, and BOYLE *, District Judge.

EDWARD J. BOYLE, Sr., District Judge.

In this appeal, our jurisdiction is invoked under 33 U.S.C. § 921(c) to review the Decision and Order of the Benefits Review Board ("BRB") of the United States Department of Labor which affirmed an order of an Administrative Law Judge ("ALJ"). The order of the ALJ, set forth below, awarded future compensation benefits pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA"), to David F. Collier, respondent herein, notwithstanding his failure to obtain prior approval of his employer, Petroleum Helicopters, Inc. ("PHI"), and its insurer, American Home Insurance Company (collectively "employer/carrier"), for the compromise by respondent of his

---

\* District Judge of the Eastern District of Louisiana, sitting by designation.

third party liability action brought against Continental Oil Company ("Conoco").

The question we must answer, though novel, is a narrow one which may be stated simply: does the failure by an injured employee to obtain the prior consent of the employer/carrier to settlement of the employee's claim against a third party tortfeasor bar the employee's right to future benefits under LHWCA when the employer/carrier has contractually waived their subrogation rights against the third party tortfeasor? We answer that question affirmatively.

The following background facts appear in the decision of the Administrative Law Judge and are not challenged by the parties. On August 27, 1976, respondent David Collier was injured while working as a helicopter pilot for PHI. The injury occurred on the landing platform of a drilling rig owned by Conoco and located on the Outer Continental Shelf off Louisiana in the Gulf of Mexico. Collier thereafter applied for and received benefits from PHI's insurance carrier. Collier's compensation rate was $176.71 per week, and the carrier began making payments the week of the injury.

Collier subsequently sued Conoco in Federal District Court,[1] seeking $750,000 in damages. Collier settled this claim against Conoco for $50,000 on April 17, 1979 from which settlement he netted $23,020.94. This settlement was confected without the approval of PHI or its carrier, and compensation payments were terminated for that reason on April 17, 1979.

On August 14, 1979, Collier initiated proceedings under LHWCA advancing claims for temporary total disability, permanent partial disability, and future medical expenses. Petitioners inte_posed Collier's failure to procure petitioners' consent to the settlement as a complete defense to any liability for future compensation or medical expense. An Administrative Law Judge conducted a hearing on October 8, 1981, rejected petitioners' legal defense,

and filed a compensation order on August 2, 1982, which provided in pertinent part:

1. The Respondent [PHI] is ordered to pay permanent partial disability benefits to the claimant pursuant to the Act, based on his average weekly wage of $265.07 from April 17, 1979 and continuing.

2. Respondent is entitled to set-off $23,020.94 against benefits accrued since the suspension of the compensation benefits on April 17, 1979.

3. Interest shall be paid on all accrued benefits at the rate of six percent per annum computed from the date such payment was originally due until paid.

4. Respondent is to pay to Claimant the sum owing and due in the amount of $176.71 for the week of August 10, 1978 through August 17, 1978 plus interest on that amount at six percent per annum until paid.

(In this appeal, this last award is not challenged, and we therefore do not disturb it.) The BRB affirmed this order on March 6, 1985.

We begin our analysis of the legal issue herein with an examination of the text of 33 U.S.C. § 933(g)(1):

If the person entitled to compensation ... enters into a settlement with a third person ... for an amount less than the compensation to which the person ... would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation....

Petitioners herein contend that because their approval was not obtained for Collier's settlement with Conoco, § 933(g)(1) terminated any further liability on their part for compensation benefits.

However, Collier argues that the apparent, indeed the literal, requirement of § 933(g)(1) for consent to settlement is sus-

1. *Collier v. Conoco,* Civil Action 77–2439 (E.D. La.)

pended where, as here, the employer/carrier has contractually waived any subrogation rights against the third party tortfeasor. According to Collier, the waiver of subrogation precludes any interest on the part of petitioners in the outcome of the third party suit and removes the very reason for requiring employer/carrier approval of settlement.

Collier contends the "true purpose" of § 933(g) is found in *United Brands v. Melson,* 594 F.2d 1068 (5th Cir.1979), where an employee covered by LHWCA settled a third party claim without notice to his employer. Collier places particular reliance upon the following language in *Melson,* where the court upheld the decision of the Benefits Review Board that § 933(g) did not bar the employee's claim for compensation:

> Section 933(g) is included in the Act to avoid the inevitable prejudice that would accrue to the employer if the injured worker were allowed to settle his claim against the third party *who is liable for a fund from which the employer seeks to recoup its compensation benefits....* By giving the employer the right to approve compromises, the Act eliminates this potential prejudice. *Id.* at 1074 (emphasis added.)[2]

The thrust of Collier's position is that petitioners, by virtue of the waiver agreement with Conoco, cannot seek to recoup any compensation benefits from Conoco and suffered no prejudice from Collier's failure to obtain their approval of the settlement. Hence Collier is assertedly relieved of the obligation to get petitioners' consent.

In resolving this dispute, it is necessary to bear in mind that the applicable standard of review of BRB decisions "is limited to

considering errors of law, and making certain that the BRB adhered to its statutory standard of review of factual determinations, that is, whether the ALJ's findings of fact are supported by substantial evidence and consistent with the law." *Miller v. Central Dispatch, Inc.,* 673 F.2d 773, 778 (5th Cir.1982). In the instant case, we review the BRB's interpretation of the Act for legal error, there being no dispute among the parties as to any facts to this issue. *Id.* at 779.

In the instant case, we find that the BRB and the ALJ labored under a misconception of the Act. While we acknowledge that the employer's right "to recoup its compensation benefits" from any settlement fund created by a third-party tortfeasor constitutes *one* of the employer's "interests" in the settlement, it is not his *only* interest. Indeed, another "interest" is implicitly recognized in language omitted by Collier's quotation from *Melson:*

> In our example, assume that the injured worker is entitled to $10,000 in compensation benefits. If the employee were to unilaterally settle his claim against the third party for $1.00, the covered employer would be liable for the remaining $9,999.... The employer would not approve the proposed $1.00 settlement and would insist on a larger one. If the third party would then settle the claim against it for $5,000, the employer's ultimate liability would then be reduced to $5,000. *Melson, supra,* 594 F.2d at 1074.

In other words, this "interest" consists in the employer's statutory right to a set-off against his compensation payments for any amount received by the employee by way of settlement with a third party tortfeasor, 33 U.S.C. § 933(f);[3] the right to a set-off is

---

2. *Melson* involved a tort that did not occur during the employee's employment for the covered employer. The court observed that the

> compensation due Melson is not a shared liability between McKnight [the alleged third party tortfeasor] and United Brands [the employer] and Melson's compromise with McKnight does not affect United Brands' duty to Melson. Since there is no possibility of prejudice accruing to United Brands by rea-

son of Melson's settlement, we conclude that the Benefits Review Board was correct in its determination that 33 U.S.C. § 933(g) does not bar this action.

Thus, *Melson* is not controlling herein.

3. In pertinent part, § 933(f) provides:
> If the person entitled to compensation institutes proceedings [against a third person] the employer shall be required to pay as compensation under this chapter a sum equal to the

wholly independent of any right to subrogation.

These very principles were unambiguously expressed in *Petro-Weld v. Luke,* 619 F.2d 418 (5th Cir.1980):

> By its plain terms, Section 33(f) fixes the liability of the employer-carrier for compensation in the future after a third party settlement or judgment has been obtained. It simply cannot be read to mean that the employer-carrier is liable to presently pay compensation in addition to the amount received from the third party without first exhausting that fund, and thus provide double recovery.
>
> ... In our view, Section 933(f) has nothing to do with the right of subrogation of the employer-carrier. That section provides a statutory right to have the employer-carrier's liability for future compensation determined under its provisions. *Id.* at 421 (citation omitted).

It is therefore false to suggest that waiver of subrogation exhausts an employer's interest in the terms of a settlement between an employee and a third-party tortfeasor.

Moreover, there is nothing in the language of § 933 to support a "waiver of subrogation" exception to the unqualified requirement that an employee obtain the consent of the employer and carrier for any settlement with a third party tortfeasor. To the contrary, § 933(g)(1) is brutally direct: "the employer shall be liable for compensation ... *only* if written approval of the settlement is obtained from the employer and the employer's carrier" (emphasis added). As if the language of § 933(g)(1) weren't clear enough, the mandatory nature of the written approval requirement is reiterated in § 933(g)(2), so that the two provisions frame an unmistakable scheme:

> If ... the worker desires to settle the claim for *less* than the total compensation owed by the employer, the worker must obtain the written approval of both the employer and its insurance carrier. [33 U.S.C.] § 933(g)(1). If such approval is obtained, the net amount of the settle-

ment reduces the amount of the employer's liability to the same extent that a judgment would. *Id.* If such approval is not obtained, "all rights to compensation and medical under [the LHWCA] *shall be terminated,* regardless of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits under this chapter." *Id.* § 933(g)(2). *Peters v. No. River Ins. Co. of Morristown, N.J.,* 764 F.2d 306, 311–12 (5th Cir.1985) (emphasis added in part).

We also note that the legislative history of the 1984 amendments to LHWCA admits no exception to the written approval requirement:

> This section further provides that if a claimant who has brought a cause of action against a third party enters into a settlement in an amount less than the amount to which the claimant would be entitled under the Longshore Act, the employer shall be responsible for additional compensation *only* if the employer has approved the settlement agreement. H.R.Rep. No. 98–570, Part I, 98th Cong., 2d Sess. 30–31, *reprinted in* [1984] U.S. Code Cong. & Ad.News, 2734, 2763–64 (emphasis added).

What respondent has sought and obtained below, and what he seeks to preserve on appeal, is nothing less than an amendment of the statute by judicial interpretation. The invitation to transgress the prerogative of Congress must be declined.

Although petitioners further challenge on appeal the sufficiency of evidence to support the ALJ's finding of permanent partial disability, our resolution of the employer consent issue makes it unnecessary for us to address this question.

Accordingly, the Decision and Order of the Benefits Review Board is SET ASIDE and this matter is REMANDED to the Administrative Law Judge for the entry of an order consistent with this opinion.

---

excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person.