AVONDALE SHIPYARDS, INC.,
Petitioner,

v.

Billy R. VINSON, Claimant, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 78–2126.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1980.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Stewart E. Niles, Jr., New Orleans, La., for petitioner.

William Henry Sanders, Jena, La., Charles F. Gay, Jr., New Orleans, La., Carin A. Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Joshua T. Gillelan, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before JONES, GEE and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Billy R. Vinson filed a claim under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. 901 *et seq.* ("LHWCA"), for injuries sustained during his employment with Avondale Shipyards, Inc. After conducting a hearing, the Administrative Law Judge ("ALJ") found in favor of Vinson and awarded $70 per week temporary total disability from October 28, 1972 to June 16, 1973; thirty-five percent permanent partial disability dating from June 17, 1973, at the rate of $44.04 per week, continuing as long as the disability or until the statutory limit of § 14(m) (formerly 33 U.S.C. § 914(m), the provision operative prior to the 1972 amendments) was reached; interest, statutory penalty, attorney fees, and medical expenses.

That decision was affirmed by the Benefits Review Board ("BRB"). Avondale appeals, contending that Vinson did not sustain a disabling injury at work, that he failed to provide timely notice of any injury, that the ALJ lacked jurisdiction because the injury occurred on land, and that interest, penalties and attorney fees should not have been awarded. The Director of the Office of Worker's Compensation, United States Department of Labor, cross-appealed on Vinson's behalf challenging the application of § 14(m) which was repealed, effective November 26, 1972. We modify the decision of the Benefits Review Board to the extent that it applied the law prior to the 1972 amendments to the LHWCA to limit Vinson's recovery; in all other respects we affirm.

*Facts*

Billy R. Vinson worked as a pipefitter for Avondale Shipyards, Inc. In May 1972, Vinson sustained a back injury when pipes fell on him during the course of his employment. The accident was reported to his supervisor, and appropriate entries made in the company's first aid records. Although Vinson did not lose any time from his job as a result of this accident, he eventually filed suit in federal district court in May 1973 for

medical expenses and loss of income. This suit was dismissed for failure to state a claim upon which relief could be granted because Vinson's sole recourse was a suit under state workmen's compensation laws.

Vinson allegedly sustained a second back injury in October 1972, during the course of his employment. The injury sustained in this October accident gave rise to the present litigation. Vinson again claimed that he was hurt when pipes fell upon him. In a hearing before the Administrative Law Judge, Vinson testified that he informed his supervisor of the accident and stated that he was going to his personal physician for examination. That afternoon, Friday, October 27, 1972, Vinson was examined by his personal physician, Dr. Cramner, who had been treating him for unrelated physical problems. Dr. Cramner referred Vinson to an orthopedic surgeon, Dr. Winters, for treatment of his back problems. Vinson visited Dr. Winters on Monday, October 30. Although Dr. Winters' handwritten notes taken at the time do not reflect the sequence of accidents Vinson testified to, Dr. Winters admitted that his notes could have been inaccurate. In any event, Dr. Winters' notes do support Vinson's testimony to the extent that they indicate two separate incidents in which Vinson injured his back. Dr. Winters advised Vinson to see Avondale's company physician, and Vinson did, either that afternoon or the next day. Avondale's doctor examined Vinson but neither his records, nor any of Avondale's records reflect that Vinson ever notified anyone of his October 27, 1972 injury. None-theless, Avondale's doctor determined that Vinson's present complaint did not relate back to the May injury. In fact, no cause was determined for Vinson's back ailments, but he was, nonetheless, placed under Avondale's self-administered non-occupational insurance program and received short-term disability benefits at the rate of $85 per week for 26 weeks.

Vinson did not return to work as a pipe-fitter at Avondale while he remained under Avondale's insurance program. Instead, because his back problems persisted, he underwent surgery on February 13, 1973. After a period of convalescence, he returned to Avondale in June 1973, doing "light duty" work in the fabrication shop for several months, after which he was returned to regular duty work as a pipefitter. Vinson complained of continued back problems, though, and when his request to be returned to light duty work was not honored, he quit Avondale's employ.

### Existence and Notice of Injury

Avondale contends that Vinson failed to establish the existence of an injury in October 1972, but attributes his back problems to the May accident. This issue presents only a factual dispute on which we find substantial evidence in the record as a whole to sustain the ALJ's determination, thereby warranting the decision of the Review Board.[1] In resolving disputes under the LHWCA "all doubtful questions of fact are to be resolved in favor of the injured employee." *Strachan Shipping Co. v. Shea*, 406 F.2d 521, 522 (5th Cir.), *cert. denied*, 395

1. Under 33 U.S.C. § 921(c) the court of appeals only reviews orders of the Benefits Review Board. The Board, in turn, reviews decisions of the administrative law judge and is bound to uphold the ALJ's decision if it is supported by substantial evidence. § 921(b)(3). When the court of appeals reviews decisions of the BRB, then, its only function is to correct errors of law and to determine if the BRB has adhered to its proper scope of review—*i. e.*, has the Board deferred to the ALJ's fact-finding or has it undertaken de novo review and substituted its views for the ALJ's. *Presley v. Tinsley Maintenance Service*, 529 F.2d 433 (5th Cir. 1976). The appellate court must nonetheless conduct an independent review of the record to determine if the ALJ's findings are supported by substantial evidence. *Sun Shipbuilding & Dry Dock v. McCabe*, 593 F.2d 234 (3rd Cir. 1979). In labor cases, by contrast, the labor board may disagree with the findings of the administrative law judge, but it is the *Board's* findings that the court reviews under a substantial evidence test. *Presley*, 529 F.2d at 436; 29 U.S.C. § 160(e). The LHWCA, therefore, has the effect of shifting deference away from the BRB and to the ALJ. The only difference is what institution, the ALJ or the Board which reviews its decision, is entitled to the ultimate deference when there is a conflict. In LHWCA cases, the ALJ wins, in labor cases, the Board wins.

U.S. 521, 89 S.Ct. 1773, 23 L.Ed.2d 238 (1969); *Ryan-Walsh Stevedoring Co., Inc. v. Trainer*, 601 F.2d 1306, 1316 (5th Cir. 1979); *Young & Co. v. Shea*, 397 F.2d 185, 188 (5th Cir.), *cert. denied*, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969); *Swinton v. Kelly*, 554 F.2d 1075, 1085 (D.C.Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976).

Vinson testified that he informed his supervisor of the accident that Friday, and Avondale's personnel director the following Monday. In addition, all of Vinson's actions were consistent with his allegation of injury on October 27. He left work early that day to visit his regular physician who referred him to an orthopedic surgeon, Dr. Winters. Vinson did not return to work at Avondale immediately, but underwent a series of examinations. Vinson was examined by Dr. Winters on no less than eight occasions between October 30, 1972 and June 16, 1973, not counting two hospitalizations of two week periods, during one of which Vinson underwent back surgery. On June 16, 1973, on Dr. Winters' advice, Vinson returned to light duty work at Avondale, but was transferred to regular duty work after a few months. He voluntarily left Avondale's employ when the strain of regular duty work proved too severe and his request for a return to light duty work was denied. He then left New Orleans and joined his brother-in-law in the furniture business in Ferriday, Louisiana.

■ Our recapitulation of the facts serves not only to demonstrate the support for the ALJ's conclusion that Vinson established the existence of a compensable injury, but that Avondale received adequate notice. 33 U.S.C. § 912(a) and (b) require a claimant to file written notice of an injury within thirty days of its occurrence. It is undisputed that this notice was never given. Section 912(d) excuses the failure to provide notice, however, if the employer or his agent had knowledge of the injury, and the employer suffers no prejudice. As to the latter matter, the ALJ found that Avondale was not prejudiced by the lack of written notice. As to the former, under § 920(b) it

is presumed, in the absence of substantial evidence to the contrary, that sufficient notice has been given. It must be presumed, therefore, that an employer has notice of the work-relatedness of an injury when the injury manifests itself on the job. *See United Brands Co. v. Melson*, 594 F.2d 1068, 1072 (5th Cir. 1979); *Butler v. District Parking Management Co.*, 363 F.2d 682 (D.C.Cir.1966).

■ *Strachan Shipping Co. v. Davis*, 571 F.2d 968 (5th Cir. 1978), heavily relied on by Avondale, is therefore inapplicable. In *Strachan Shipping*, this court held that an employer's knowledge of an employee's illness was insufficient to toll the limitations period unless the employer had knowledge that the illness was job-related. In the case at bar, Vinson, on the advice of his orthopedist, reported to the company doctor for specific back complaints. Although the company doctor ruled out the May accident as a contributing factor to Vinson's current back ailment, no other cause was attributed. Nonetheless, Vinson was placed under the company's non-occupational insurance and received benefits of $85 per week in apparent recognition that he had sustained some injury. These facts, when coupled with Vinson's unrefuted testimony that he informed his supervisor of his injury, constitute sufficient knowledge on the employer's part to alert it to investigate the matter further. *See Duluth, Missabe, & Iron Range Ry. Co. v. Department of Labor*, 553 F.2d 1144, 1148 (8th Cir. 1977). That Vinson subsequently completed an insurance form on which he listed May as the date of injury, and the fact that Dr. Winters' records did not precisely corroborate Vinson's timetable, while important, do not provide compelling reasons for overturning the ALJ's decision, "Where there is substantial evidence on both sides of an issue, the [Administrative Law Judge's] finding is conclusive." *Wheatley v. Adler*, 407 F.2d 307, 314 (D.C.Cir.1968).

### Timeliness of Suit

■ Our conclusion that Avondale received adequate notice of Vinson's injury

mandates our holding that Vinson's suit was timely filed. Although § 913(a) provides a one year statute of limitations for filing a claim under the Act, the tolling provision of § 930(f) prevents its application in this case. Under § 930(f), the limitations period of § 913(a) does not begin to run against the claim of the injured employee until the employer files a report of the injury as required by § 930(a). Because Avondale failed to file the report required by § 930(a), Vinson's suit was timely. *United Brands Co. v. Melson*, 594 F.2d at 1070–73.

### Ex Parte Medical Report

■ Avondale objects to the ALJ's admission of, and reliance on, the *ex parte* medical report of Dr. Dennis LaRavia, Vinson's physician in Ferriday, Louisiana. Relying on *Southern Stevedoring Co. v. Voris*, 190 F.2d 275 (5th Cir. 1951), and *Bethlehem Steel Corp. v. Clayton*, 578 F.2d 113 (5th Cir. 1978), Avondale contends that the admission of this report denied it the right of cross-examination.

In both *Southern Stevedoring* and *Bethlehem Steel*, the ALJ based his decision in favor of the claimant, at least in part, on *ex parte* reports from claimant's doctors, thereby effectively denying the employer the right to cross-examine. In the case at bar, by contrast, while the ALJ accepted Dr. LaRavia's medical report although he was not present to testify, the record of the administrative hearing was pointedly left open to afford Avondale the opportunity to impeach the report's reliability by subsequent cross-examination of the doctor. The ALJ told Avondale that the medical report would be "read in connection with the deposition or affidavit or interrogatories, which ever way you would like to proceed." Record at 32.

Avondale chose not to accept the ALJ's offer, though it alleged no difficulty in complying. That Avondale would have suffered no prejudice by utilizing post-hearing interrogatories or depositions is evident from the fact that its evidence would have been of the same nature as Vinson's. Because only Dr. LaRavia's report was introduced uncoupled with live testimony, no demeanor evidence was available to affect the ALJ's perception. Avondale, in fact, may well have been placed at a considerable advantage. By proceeding post-hearing, not only would Avondale have had the luxury of additional time to prepare its questions, it would have had the benefit of a hindsight unavailable under traditional cross-examination; claimant's entire case would already have been presented.

Title 33, section 923(a) [2] provides for an informal administrative hearing unencumbered by "common law or statutory rules of evidence or by technical or formal rules of procedure," and even *Southern Stevedoring* stated that this "relaxation of the ordinary rules of procedure and evidence does not invalidate the proceedings, provided the substantial rights of the parties are preserved." 190 F.2d at 277. By affording

---

2. 33 U.S.C. § 923(a) (1978) provides as follows:
   § 923. Procedure before deputy commissioner or Board
   (a) In making an investigation or inquiry or conducting a hearing the deputy commissioner or Board shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as provided by this chapter; but may make such investigation or inquiry or conduct such hearing in such manner as to best ascertain the rights of the parties. Declarations of a deceased employee concerning the injury in respect of which the investigation or inquiry is being made or the hearing conducted shall be received in evidence and shall, if corroborated by other evidence, be sufficient to establish the injury.

Also, *see Young & Co. v. Shea*, 397 F.2d at 188 ("hearsay evidence is generally admissible [in LHWCA proceedings] if considered reliable"), *cited with approval* in *United States Pipe and Foundry Co. v. Webb*, 595 F.2d 264, 269 n.5 (5th Cir. 1979). *Webb* held admission of, and reliance on, *ex parte* medical reports did not constitute a denial of the right to cross-examination in administrative proceedings under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 801 *et seq.* For a discussion of the factors bearing on reliability, and hence, admissibility, of *ex parte* medical reports in proceedings under either the Administrative Procedure Act, 5 U.S.C. §§ 556(d) *et seq.* or the Social Security Act, 42 U.S.C. § 405 *et seq., see Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Avondale the opportunity of post-hearing cross-examination, we find that the ALJ provided an adequate means for the protection of Avondale's rights. We find no error in the ALJ's acceptance of this medical report.

### Conclusion

Avondale's remaining objections, which ultimately hinge upon the ALJ's factual resolutions, are overruled because we have found sufficient evidence in the record as a whole to sustain the fact-findings. The decision below is modified, though, by removing the $24,000 limitation upon Avondale's liability. The 1972 amendments (which took effect November 26, 1972) repealed the ceiling of § 14(m). We believe that Vinson is entitled to the benefit of the amendments, although his injury occurred prior to their effective date, for the reasons presented in *Hastings v. Earth Satellite Corp.,* No. 78–1759, (D.C.Cir. March 19, 1980), slip op. at 15–20.

AFFIRMED AS MODIFIED.